IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EDUARDO MARTINEZ DOMINGUEZ; MARIA ISABEL GARCIA MANTILLA**<br><br>PLAINTIFFS<br><br>**V.**<br><br>**CAPARRA COUNTRY CLUB**<br><br>DEFENDANT | **Civil No**. 17-1395 (DRD) |

## OPINION AND ORDER
## I. FACTUAL AND PROCEDURAL HISTORY

On March 24, 2017, Eduardo Martinez Dominguez and Maria Isabel Garcia Mantilla (the "Plaintiff") filed the instant Complaint against Caparra Country Club, Inc. (the "Defendant") for violation of the Fair Debt Collection Practices Act (hereinafter the "FDCPA"). (Compl., Docket No. 1) Essentially, the Plaintiff seeks the following: (a) a declaration of the rights, duties and liabilities of the parties under the Caparra Country Club membership agreement and applicable regulations, (b) compensatory damages and other relief caused as a result of the Defendant's alleged breach of its contractual obligations and under the FDCPA, and (c) attorney's fees incurred by the Plaintiff in bringing this action. (Id. at 1.)

The event that gave rise to the controversy between the parties occurred on April 28, 2013 when a member of the Defendant Caparra Country Club, Inc. punched the Plaintiff in the face during a party held at the Defendant's facilities. (Id. at 15.) Due to the bodily damages the Plaintiff incurred, on April 28, 2014, the Plaintiff sued the Defendant in Bayamón Superior Court of Puerto Rico (civil case number DDP 2014-0312

(703)) for damages pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code.[1] (Def. Informative Mot at Docket No. 16., Ex. 1.)

According to the instant Complaint, after the incident occurred, the Defendant's comptroller told the Plaintiff that he did not need to continue paying his monthly membership fee until the Board of Directors resolved the matter. (Docket No. 1 ¶15b.) As such, the Plaintiff stopped making payments and requested that he be placed as a passive member, which are members not required to pay monthly membership fees. (Id.) The Complaint alleges that the Defendant nonetheless continue to send Plaintiff invoices specifying the amounts he owed and also stating that he was suspended from the use and enjoyment of the club's facilities. (Id. ¶ 16.) Subsequently, on October 13, 2016, the Defendant sent a letter to the Plaintiff in which the Plaintiff was recognized as a passive member and his account was credited for $6,463.16. (Id. at ¶ 17.) This October 2016 letter also provided the Plaintiff with an option to commit to a payment plan to start making his monthly payments. (Id.) Plaintiff refused to make membership payments. (Id.) On January 19, 2017, Caparra Country Club, Inc. filed a collection complaint against the Plaintiff seeking payment of due membership fees and usage charges before the Guaynabo Municipal Court, case number DECM 2017-0052. (Def. Informative Mot. at Docket No. 16, Ex. 4.) On February 20, 2017, the Plaintiff received a letter from the Defendant signed by its General Manager stating the Plaintiff was expulsed from the club. (Docket No. 1 ¶21.)

As a result of these events, the Plaintiff claims that Defendant did not comply with Article 8 and Article 9 of the club's rules and regulations for expulsing members. (Id. ¶ 18.) Thus, Plaintiff seeks a declaration of the rights and duties of the parties with respect to the Plaintiff's alleged expulsion without constitutional due process and in violation of the rules and regulations of Caparra Country Club, Inc. (Id. ¶ 23.) Likewise, Plaintiff

---

[1] The Plaintiffs, Eduardo Martinez Dominguez and Maria Isabel Garcia Mantilla, and the Defendant, Caparra Country Club Inc. and Universal Insurance Company, executed a *Settlement Agreement and Confidential Release* (Docket No. 8, Exhibit 3) whereby the Plaintiff agreed to release and discharge the Defendant from any liability or claims for relief arising from the events that occurred on April 28, 2013 at the Defendant's premises, and further agreed to settle the cause of action that was initiated in Bayamon Superior Court.

2

requests this Court to declare void and null the Defendant's declaration of expulsion against the Plaintiff. (Id. ¶ 25.) Essentially, the Plaintiff alleges that the Defendant's decision to expulse him is a retaliation action arising from the fact that the Plaintiff initiated a suit in state court claiming damages for the incident that occurred at the club's premises during April 2013. (Id. ¶21.) Further, the Plaintiff invokes and seeks relief under the FDCPA by claiming that the collection action commenced by the Defendant in Guaynabo Municipal Court is in violation of the FDCPA as it prohibits debt collectors from engaging in abusive, deceptive and unfair practices. (Id. ¶38; Pl.'s Opp'n to Mot. to Dismiss, Docket No. 13 at 5.) The Complaint alleges that the Defendant engaged the services of an attorney as a debt collector and did not advise nor provided the Plaintiff with the required notice of debt. (Docket No. 1) Lastly, the Plaintiff seeks payment for the damages suffered due to the Defendant's breach of contract. (Id. ¶26-35.)

On June 2, 2017, the Defendant filed a *Motion to Dismiss* arguing this Court lacks jurisdiction to address this claim because the Plaintiff does not properly invoke federal law or constitutional rights. (Def. Mot. to Dismiss, Docket No. 8 at 7.) The Defendant additionally argues that the Complaint should be dismissed on res judicata and collateral estoppel grounds as well as for forum shopping and forum non conveniens. (Id.) The Plaintiff filed an opposition to Defendant's Motion to Dismiss on June 30, 2017. (Pl.'s Opp'n to Mot. to Dismiss, Docket No. 13)

## II. STANDARDS OF REVIEW

### A. FED R. CIV. P. 12(B)(1)

A case may be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure or for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The standard of legal analysis under subsection 12(b)(1) is "similar to that accorded a dismissal for failure to state a claim" under subsection 12(b)(6). Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995); Puerto Rico Tel. Co. v. Telecomm. Regulatory Bd. of Puerto Rico, 189 F.3d 1, 14 n.10 (1st Cir. 1999) ("The standard

of review . . . is the same for failure to state a claim and for lack of jurisdiction."). However, "[w]hile the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

In a jurisdictional challenge, the burden of proving jurisdiction is with the plaintiff. Murphy v. United States, 45 F.3d at 522; Mercado Arocho v. United States, 455 F. Supp.2d 15, 17 (D.P.R. 2006)("Plaintiff shall meet the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence.")(internal citations and quotations omitted).

As the First Circuit has explained, "[t]here are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges." Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007). In a facial challenge, the Court considers whether "the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for purposes of the motion.'" Id. (citation omitted). In a factual challenge, however, "'a court's power to make findings of fact and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of the plaintiff's cause of action.'" Id. (quoting Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997). See also Hernandez-Santiago v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005)("Where a party challenges the accuracy of the pleaded jurisdictional facts, the court may conduct a broad inquiry, taking evidence and making findings of fact."); Valentin v. Hospital Bella Vista, 254 F.3d at 364 ("[F]actual challenges . . . place in issue the accuracy, as opposed to the sufficiency, of the plaintiff's jurisdictional allegation."). In other words, in a factual attack, "the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Id. at 363.

### B. FED R. CIV. P. 12(B)(6)

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Bell Atlantic v. Twombly,

4

550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See* Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting Twombly, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570; *see e.g.* Ashcroft v. Iqbal, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See* Iqbal, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 556 U.S. 678) (quoting Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here

5

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 679-80 (citing Twombly, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez, 640 F.3d at 12, (citing Iqbal, 556 U.S. 679); Sanchez v. Pereira-Castillo, 590 F.3d 31, 45 (1st Cir. 2009).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010) (citing Twombly, 550 U.S. at 556); Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. 679); *see* Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see* Ocasio-Hernandez, 640 F.3d at 12 (citing Twombly, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 39 n. 6 (2012)(emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011). "Specific information,

even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; *see* Iqbal, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see* Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir. 2010) (The Twombly and Iqbal standards require District Courts to "screen[] out rhetoric masquerading as litigation."). The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under Twombly-Iqbal. *Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." Id. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III. ANALYSIS

When a court is confronted with a challenge of federal jurisdiction and a 12(b)(6) motion, generally, a court should rule on the jurisdictional issue first, before deciding on the 12(b)(6). "If the court [then] lacks subject matter jurisdiction [pursuant to a 12(b)(1) motion], assessment of the merits [pursuant to a 12(b)(6) motion] becomes a matter of purely academic interest." *See* Gonzalez v. Otero, 172 F. Supp. 3d 477, 495 (D. P.R. 2016) (*citing* Deniz v. Municipality of Guaynabo, 285 F. 3d 142, 149 (1st Cir. 2002)). Likewise, when ruling on a 12(b)(1) motion, the Court "applies the same standard of review [as]… under a 12(b)(6)." *See* Negron-Gaztambide v. Hernandez Torres, 35 F. 3d 25, 27 (1st Cir. 1994). Accordingly, this Court will first rule upon the 12(b)(1) motion and then if necessary proceed to the 12(b)(6) motions.

7

**Plaintiff failed to allege a cause of action under the FDCPA**

Federal courts are courts of limited jurisdiction and can only adjudicate those cases that fall within Article III of the Constitution and a congressional authorization enacted thereunder. <u>Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP.</u>, 362 F.3d 136, (1st Cir. 2004). Consistent with this principle, Federal Rule of Civil Procedure 12(h)(3) provides that "if a court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). As such, federal courts are expected to monitor their jurisdictional boundaries vigilantly and to guard carefully against expansion by distended judicial interpretation. <u>Am. Fire & Cas. Co. v. Finn</u>, 341 U.S. 6, 17-18 (1951).

In the case at bar, the Plaintiff argues 28 U.S.C. § 1331 grants this Court federal question jurisdiction to address the Plaintiff's claim under the Federal Debt Consumer Protection Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq*. (Compl.; Pl.'s Opp'n to Mot. to Dismiss at 5-6.) In order to prevail on a FDCPA claim, the Plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) **the defendant is a debt collector as defined by the FDCPA**, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. <u>O'Connor v. Nantucket Bank</u>, 992 F.Supp.2d 24, 30 (D. Mass. 2014). Congress adopted the FDCPA with the purpose to eliminate abusive debt collection practices by debt collectors. 15 U.S.C.A. § 1692; <u>Marx v. General Revenue Corp.</u>, 568 U.S. 371, n.1 (2013). As such, the FDCPA regulates only the practices of debt collectors. The statute contains both a definition of "debt collector" and language describing certain categories of persons and entities excluded from the definition. 15 U.S.C.A. § 1692a(6)(A)–(F).

To illustrate, the FDCPA defines "debt collector" as:

> **(6)** [**a**]**ny person** who uses any instrumentality of interstate commerce or the mails in any business **the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect**, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, **the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that**

> **a third person is collecting or attempting to collect such debts**. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. **The term does *not* include**--
>
> > **(A)** any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
> >
> > **(B)** any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;
> >
> > **(C)** any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;
> >
> > **(D)** any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;
> >
> > **(E)** any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and
> >
> > **(F)** any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

Id. (emphasis added).

Thus, only if the named defendant qualifies as a "debt collector" under the definitional language cited above may the defendant be liable under the FDCPA. As a result, creditors are generally not subject to the FDCPA. Chiang v. Verizon New England Inc., 595 F.3d 26, 41 (1st Cir. 2010); *See also* Police v. National Tax Funding, L.P., 255 F.3d 379, 403 (3rd Cir. 2000) (stating creditor's – as opposed to "debt collectors"- generally are not subject to the FDCPA.) Congress excluded creditors from the statute premised on:

> "Congress recogniz[ing] that the activities of creditors seeking to collect their own debts are restrained by the creditors' desire to retain their good will with consumers ... [while] [t]hose collecting debts due to another were thought to be not similarly restrained ... and more likely to engage in the type of unscrupulous activities the [FDCPA] seeks to prevent."

Carlson v. Long Island Jewish Med. Ctr., 378 F.Supp.2d 128, 131 (E.D.N.Y. 2005).

Notwithstanding the above, the FDCPA *does* apply to "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect [its debts]." 15 U.S.C.A. § 1692a(6). The First Circuit has recognized that Congress implemented this exception to "combat 'flat-rating,' whereby creditors attempt to intimidate debtors by creating the false impression that a third party is participating in the debt collection process." Chiang, 595 F.3d at 41-42.

In the present case, as previously stated, in order to prevail on a FDCPA claim, the Plaintiff must prove is that the Defendant is a "debt collector" as defined by the FDCPA. O'Connor, 992 F.Supp.2d at 30. Even though there is no case law specifically addressing the issue at hand, which is whether a club collecting past due membership fees is considered a "debt collector" under the definition of the FDCPA, decisions from other district courts and some circuits provide guidance upon which this Court can draw analogies.

First, the First Circuit has held that a telecommunications company was *not* considered a "debt collector" within the meaning of the FDCPA when there was no evidence that the company used a third party name in place of its own when attempting to collect on unpaid telephone bills from customers. Chiang, 595 F.3d at 42. Furthermore, the Ninth Circuit has ruled that a homeowners' association attempting to collect assessments did not fall within definition of "debt collector" because it was collecting its own debt. Doran v. Aus, 308 Fed. Appx. 49 (9th Cir. 2009); *See also* Azar v. Hayter, 874 F. Supp. 1314 (N.D. Fla. 1995), aff'd without published opinion, 66 F.3d 342 (11th Cir. 1995)(holding condominium association that filed suit against condominium owner was not a debt collector inasmuch as the association, as a creditor, could not be a debt collector); Davis Lake Community Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, (2000)(reasoning homeowner association collecting past-due assessment was not a "debt collector" as the FDCPA only applies

to those who regularly collect debts on behalf of others and not to those creditors trying to collect their own debts.)

Moreover, a casino seeking to collect money because of a customer's gambling losses was not a "debt collector" absent any evidence that the casino used a name other than its own. Fleeger v. Bell, 95 F.Supp.2d 1126 (D. Nev. 2000.) Additionally, courts have held that banks that attempted to collect payments due to their respective institutions from mortgagors were not "debt collectors" within meaning of FDCPA. O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24 (D. Mass. 2014); *See also* KPMG Peat Marwick v. Texas Commerce Bank, 976 F. Supp. 623, (S.D. Tex. 1997); Thomasson v. Bank One, Louisiana, N.A., 137 F. Supp. 2d 721 (E.D. La. 2001)(finding bank is not 'debt collector' because the bank primarily loans money to consumers rather than collects outstanding debts.)

In sum, courts agree that institutions that attempt to collect payment of debt owed to themselves do not constitute "debt collectors" for purposes of the FDCPA, unless the institution attempts to collect the debt under an assumed name.

In the case at bar, the Complaint was filed under the FDCPA, 15 U.S.C. § 1692 *et seq.* (Compl.) The Complaint, however, makes no allegations showing the Defendant is a "debt collector" as defined in the FDCPA. (Id.) To illustrate, the Complaint alleges: (i) that the Defendant sent invoices to the Plaintiff's house stating that he was in arrears (Id. ¶16), (ii) that on October 13, 2016, the Defendant issued a letter to the Plaintiff crediting his account in the amount of $6,463.16 and providing him with a payment plan to cover arrears (Id. ¶17), and (iii) that the Defendant sent Plaintiff an expulsion letter on February 20, 2017 signed by its General Manager (Id. ¶21.) As can be readily determined from these allegations, the Complaint does not allege that the Defendant regularly attempts to collect debts owed to others. Further, the general rule provides that creditors are not subject to the FDCPA. The Defendant in this case simply attempted to collect its own debt, and in accordance with the case law cited above, for this reason it is excluded from the definition of a "debt collector" provided by the FDCPA. *See* 15 U.S.C.A. § 1692a(6). Moreover, the Complaint does not

allege that the Defendant was collecting the debt under a deceptive name. Thus, taking the allegations as true, the Plaintiff has failed to state a substantial federal claim against the Defendant as he has failed to allege the Defendant was a "debt collector".

Additionally, this Court considered the Plaintiff's allegations that the collection action commenced by the Defendant in the Guaynabo Municipal Court against the Plaintiff was an abusive, deceptive and unfair practice prohibited by the FDCPA. (Compl. ¶37-38.) Specifically, the Plaintiff alleged that the Defendant violated the FDCPA when it "engaged the services of an attorney as debt collector and did not advise nor provide[d] plaintiff with the required notice of as to his debt validation rights..." (Id. ¶38.) The Supreme Court held in Heintz v. Jenkins that the FDCPA applies to "attorneys who 'regularly' engage in consumer-debt collection activity, even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299 (1995.) The Supreme Court provided the following two reasons for supporting the premise that the FDCPA applies to the litigating activities of lawyers:

> *First,* the Act defines the "debt collector [s]" to whom it applies as including those who "regularly collec[t] or attemp[t] to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another." § 1692a(6). **In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts**. See, *e.g.,* Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings").
>
> *Second,* in 1977, Congress enacted an earlier version of this statute, which contained an express exemption for lawyers. That exemption said that the term "debt collector" did not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Pub.L. 95-109, § 803(6)(F), 91 Stat. 874, 875. In 1986, however, Congress repealed this exemption in its entirety, Pub.L. 99-361, 100 Stat. 768, without creating a narrower, litigation-related, exemption to fill the void. **Without more, then, one would think that Congress intended that lawyers be subject to the Act whenever they meet the general "debt collector" definition**.

Id. at 295-96 (emphasis added).

In the present case, however, the Plaintiff did not sue the attorney who initiated the collection action against him in Municipal Court, which in any event was a different attorney than the one who represents the

12

Defendant in this case. (Compl.) As a result, this Court is not in a position to determine whether an attorney who is not a party in this suit is liable under the FDCPA. Further, the Plaintiff does not allege facts to support that the attorney who initiated the collection action against him in Municipal Court *regularly* attempts to collect consumer debts through litigation. (Id.) Even taking the allegations in the Complaint as true, the Court cannot reasonably determine that the initiation of a single collection of money action demonstrates the attorney regularly initiates these types of proceedings. Therefore, considering the Plaintiff did not sue the attorney whose actions are questioned and that there are no allegations in the Complaint to support the premise that the attorney *regularly* engages in the collection of consumer debts, the Court further finds that the Plaintiff has failed to state a substantial federal claim under the FDCPA.

## IV. CONCLUSION

For the reasons stated above, the Court finds that the claim asserted by the Plaintiff does not involve a federal question claim, and consequently, the Court lacks subject matter jurisdiction over this action. In view of the fact that the Court finds it lacks subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), there is no need to further proceed. "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." Deniz v. Mun. of Guaynabo, 285 F.3d 142, 150 (1st Cir. 2002). For all of the above reasons, the Defendant's *Motion to Dismiss* is **GRANTED**. Judgment of dismissal will be entered accordingly.

Moreover, substantive state law claims, against the Defendant are to be **DISMISSED WITHOUT PREJUDICE**. Plaintiff has filed claims for breach of contract, bad faith, and breach of covenant of good faith and fair dealing under the Civil Code and jurisprudence of Puerto Rico. However, the Court's exercise of supplemental jurisdiction in a case in which there is no cause of action under a federal statute is discretionary. See 28 U.S.C. § 1367(c)(3). The First Circuit has stated that "[t]he Supreme Court has made pellucid 'that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.' " Rivera-Diaz v. Humana

Insurance of Puerto Rico, Inc., 748 F. 3d 387, 392 (1st Cir. 2014)(quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).

Further, the First Circuit has also addressed times wherein the federal court must reassess its jurisdiction in regards to jurisdiction over state claims. See, e.g. Camelio v. American Foundation, 137 F. 3d 666, 672 (1st Cir. 1998) wherein the First Circuit stated that "[i]f…the Court dismisses the foundational federal claims, it must reassess its jurisdiction. … 'Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.' " Id. (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). See also Rodriguez v., Doral Mortg. Corp, 57 F. 3d 1168, 1176-77 (1st Cir. 1995) (wherein the First Circuit explained that the court may dismiss the state claims without prejudice should federal claims be dismissed). Hence, in the case at bar, the Court chooses not to exercise supplemental jurisdiction over the pending state claims.

Accordingly, the Plaintiff's federal claim pursuant to the Fair Debt Collection Act is hereby **DISMISSED WITH PREJUDICE**, while the Plaintiff's state law claims pursuant to the Civil Code and case law of Puerto Rico are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of January, 2018.

/s/ DANIEL R. DOMÍNGUEZ
DANIEL R. DOMÍNGUEZ
U.S. District Judge